OPINION OF THE COURT
William C. Brennan, J.
The respondent, herein, was admitted to Manhattan Psychiatric Center (Manhattan) on May 27,1981 following a hearing on May 21, 1981 in which he was found unfit to proceed and dismissing the underlying criminal charges upon a final order of observation.1
On November 25, 1981, the District Attorney received notice (pursuant to CPL 730.60, subd 6, par [a]) dated November 23, 1981 informing the District Attorney that Manhattan “intends to proceed with Unescorted Furlough, conversion to Civil Status on the above-named on December 7, 1981.[1]
Thereafter, on December 9, 1981, this court signed an order to show cause, brought on by the People, why an order should not be entered precluding the Office of Mental Health from granting unescorted furloughs to the respondent.
*32 In their application the People requested that a hearing be held prior to any change in respondent’s status and that the District Attorney be provided certified copies of the respondent’s medical and clinical records.
The respondent, the Attorney-General of the State of New York (Attorney-General) and the Director of the Mental Health Information Service (M.H.I.S.) opposed the application urging that the statute does not give the District Attorney the right to receive a hearing to contest a psychiatric center’s proposed change of status of a patient even though notice of such change is required to be given to the District Attorney.
Upon careful review of the pertinent statutes this court issued an order and decision on February 4, 1982 in which it directed the Commissioner of Mental Health to provide the District Attorney and counsel for M.H.I.S. with the respondent’s clinical records in the commissioner’s custody. The balance of the People’s application requesting a hearing was reserved pending further action by the District Attorney in accordance with said order. (People v Jones, 112 Misc 2d 841.)
On March 12,1982 the parties to the original application again appeared before the court whereupon the District Attorney renewed his application that he be granted a hearing. The Attorney-General and M.H.I.S. remain opposed to said application.
The sole issue to be determined in the instant matter is whether the People are entitled to a hearing prior to any change in the respondent’s status when notice of such change is given pursuant to statutory requirements.
CPL 730.60 (subd 6) reads as follows:
“6.(a) Notwithstanding any other provision of law, no person committed to the custody of the commissioner of mental hygiene pursuant to article seven hundred thirty of this chapter, or continuously thereafter retained in such custody, shall be discharged, released on condition or placed in any less secure facility or on any less restrictive status, including, but not limited to vacations, furloughs and temporary passes, unless the commissioner shall deliver written notice, at least four days, excluding Satur *33 days, Sundays and holidays, in advance of the change of such committed person’s facility or status, to all of the following:
“(1) The district attorney of the county from which such person was committed;
“(2) The superintendent of state police;
“(3) The sheriff of the county where the facility is located;
“(4) The police department having jurisdiction of the area where the facility is located;
“(5) Any person who may reasonably be expected to be the victim of any assault or any violent felony offense, as defined in the penal law, which would be carried out by the committed person; and
“(6) Any other person the court may designate.
“Said notice may be given by any means reasonably calculated to give prompt actual notice.
“(b) The notice required by this subdivision shall also be given immediately upon the departure of such committed person from the commissioner’s actual custody, without proper authorization. Nothing in this subdivision shall be construed to impair any other right or duty regarding any notice or hearing contained in any other provision of law.
“(c) Whenever a district attorney has received the notice described in this subdivision, and the defendant is in the custody of the commissioner pursuant to a final order of observation or an order of commitment, he may apply within three days of receipt of such notice to a superior court, for an order directing a hearing to he held to determine whether such committed person is a danger to himself or others. Such hearing shall be held within ten days following the issuance of such order. Such order may provide that there shall be no further change in the committed person’s facility or status until the hearing. Upon a finding that the committed person is a danger to himself or others, the court shall issue an order to the commissioner authorizing retention of the committed person in the status existing at the time notice was given hereunder, for a specified period, not to exceed six months. The district *34 attorney and the committed person’s attorney shall be entitled to the committed person’s clinical records in the commissioner’s custody, upon the issuance of an order directing a hearing to be held.
“(d) Nothing in this subdivision shall be construed to impair any other right or duty regarding any notice or hearing contained in any other provision of law.” (Emphasis supplied.)
Public interest versus the rights of patients confined in psychiatric centers are two sides of the judicial scale that must be carefully weighed and balanced.
In its initial decision on this subject People v Jones (supra), the court took a “novel approach”[2] to the issue noting that the statute allowed the District Attorney to review clinical records only where a hearing is, in fact, directed to be held by the court.
Referring to the last portion of CPL 730.60 (subd 6, par [c]), regarding clinical records as an example of “putting the cart before the horse” and taking into consideration “the calendar congestion caused, in part, by the proliferation of hearings sought and granted” the court intended to eliminate unnecessary applications for hearings following the review and proper evaluation of medical and clinical records by all parties concerned.
Having received and reviewed said records, and based upon the information contained therein, the People renewed their request for a hearing to determine whether the respondent is a danger to himself or others.
As this court has previously noted there has been much confusion as to the intent of the Legislature regarding the right to a hearing after said notice has been received by the District Attorney.
This “deficiency” in the law was commented on by the Governor in his memorandum on approving chapter 549 of the Laws of 1980, dated June 26, 1980[3] (NY Legis Ann, *35 1980, p 220): “This bill would amend Section 730.60 of the Criminal Procedure Law and Section 29.11 of the Mental Hygiene Law to provide for notice to law enforcement authorities and potentially endangered individuals before one who has been committed to a mental hygiene facility after being found not competent to stand trial could be released. Under current law, an individual found not competent to stand trial is committed to the custody of the Commissioner of Mental Hygiene. However, the Commissioner is under no obligation to provide notice when he grants a temporary pass or furlough to the committed individual. This bill would: require that the Commissioner of Mental Hygiene give four days notice of plans to discharge, conditionally release, furlough or place in a less secure facility anyone placed in his custody pursuant to Section 730.60 of the Criminal Procedure Law; require that such notice be given to the court, the district attorney, the police agency having jurisdiction over the individual’s last place of residence, the victim and any other person who might reasonably expect to be endangered; and authorize the district attorney to petition the court for an order enjoining the committed individual’s change in status. A deficiency with respect to the notice and hearing provisions in the bill have been brought to my attention. The sponsors have agreed, however, to support a chapter amendment to address and remedy that deficiency.” (Emphasis supplied.)
Section 29.11 of the Mental Hygiene Law substantially parallels the notice provisions in CPL 730.60 (subd 6, par [a]).
The Attorney-General and M.H.I.S. oppose this application contending that the notice provisions are broader than the hearing provisions; that notice is to be given prior to any of the prescribed changes in status for a “person committed to the custody of the commissioner of mental hygiene pursuant to article seven hundred thirty of this chapter, or continuously thereafter retained in such custody” (CPL 730.60, subd 6, par [a]; emphasis supplied), *36 whereas a hearing is only authorized “[wjhenever a district attorney has received the notice * * * and the defendant is in the custody of the commissioner pursuant to a final order of observation or an order of commitment” (CPL 730.60, subd 6, par [cj; emphasis supplied).
The Attorney-General and M.H.I.S. urge this court to apply a strict construction to the statute and to foreclose the District Attorney from seeking a hearing when the final order of observation or order of commitment has expired.
The court refuses to take this narrow approach and rejects the arguments elicited by the Attorney-General and M.H.I.S.
As noted in Bellacosa’s Supplementary Practice Commentaries to CPL 730.60 (McKinney’s Cons Laws of NY, Book 11 A, 1981-1982 Pocket Part, p 313) this amended section was designed to make it more difficult for persons committed under it to be released or have a change in status: “The legislation is an immediate reaction to and an understandable and legitimate attempt to prevent serious and unfortunate occurrences where committed persons, having been released, acted violently and criminally. The amendment is structured simply to provide for notice and then hearing by the addition of a new subdivision 6 * * * Paragraph (c) of subdivision 6 triggers the hearing and retention of status mechanism. The district attorney is the authorized applicant to a superior court for a hearing to determine whether the committed person is a danger to self or others.”
In the memorandum of law submitted by M.H.I.S. it was candidly pointed out that: “concededly, the purpose is to protect the public safety by applying closer scrutiny to any changes in status proposed in regard to incapacitated defendants/patients as well as facilitating surveillance of such patients.”
The court feels compelled at this point to reiterate what it stated in its decision and order of February 4, 1982 (112 Misc 2d, supra, pp 844-845):
“The Court must interpret those portions of statutes that are ambiguous or lend themselves to a result not intended by the Legislature when viewed as a whole.
*37 “ ‘Statutory words must be read in their context, and words, phrases, and sentences of a statutory section should be interpreted with reference to the scheme of the entire section.’ (McKinney’s Cons Laws of NY, Book 1, Statutes, §97.)
“‘The Legislature is presumed to have intended that good will result from its laws, and a bad result suggests a wrong interpretation.
“ ‘Thus, while consequences cannot alter statutes, they may help fix their meaning, and are important as a clue to the meaning; and courts are not bound to close their eyes to consequences.’ (McKinney’s Cons Laws of NY, Book 1, Statutes, § 141.)
“As noted above, the ultimate responsibility of all parties concerned, in matters of this nature, is the protection and welfare of the public as well as that of the respondent, and any construction of the statute (CPL 730.60) ‘which tends to sacrifice or prejudice the public interests or welfare is not favored, and should be avoided if possible.’ (McKinney’s Cons Laws of NY, Book 1, Statutes, § 152.)”
Mindful of the need for legislative reform in this important area of the law this court addressed itself to these very issues in a letter to the chairman of the Senate’s Mental Health Committee on February 23, 1982.
However, until such reform is forthcoming it remains for the courts to resolve the existing legal conflicts in a manner that will best serve all parties concerned.
The court finds that to permit the District Attorney to have a hearing in this matter would not violate the respondent’s constitutional rights.
It should be noted that the Legislature incorporated the following language into both CPL 730.60 (subd 6, pars [b], [d]) and subdivision (h) of section 29.11 of the Mental Hygiene Law to protect against constitutional infirmities: “Nothing in this subdivision shall be construed to impair any other right or duty regarding any notice or hearing contained in any other provision of law.” (Emphasis supplied).
*38 Moreover, by refusing to grant the District Attorney’s application for a hearing, the court, “[c]onversely and by implication from the permissive language” (see Bellacosa, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 730.60, 1981-1982 Pocket Part, p 313), is in effect authorizing the proposed change in status.
By analogy, the District Attorney is mandated to participate in all applications for retention or release of defendants confined in psychiatric centers following a verdict or plea of not responsible by reason of mental disease or defect. (CPL 330.20; see n 3.)
As the court stated in Matter of Miller (Sherman) (46 AD2d 177, 183): “ ‘The public acquires a special interest in their confinement and release, which therefore must be considered by the court. When consideration is being given to the release of such a person, that public interest must be weighed against his claimed right to be set free’.”
The rationale applied in Miller (Sherman) (supra), applies equally as well in the instant proceeding.
This court held in People v Wesson (Aug. 14, 1981), that the District Attorney was entitled to a hearing noting that “[i]t would serve no purpose to require the mental facility to give notice to the People of their intention to release the patient without giving the People the right to a hearing.”
Similarly, on October 30,1981 this court issued an order directing that a hearing be held in People v Richards. (Indictment No. SP4407.) The hearing was subsequently held on January 29, 1982 before Justice Martha K. Zelman. In a decision rendered on February 8, 1982 (NYLJ, Feb. 23,1982, p 12, col 4), Justice Zelman commented that: “The hearing ordered by the Hon. Justice William Brennan was ordered rightfully pursuant to section 730.60 (6)(c) supra of the Criminal Procedure Law, after due Notice to the District Attorney as required by section 730.60 (6)(a) of the same law.”
In view of the foregoing, the court concludes that the District Attorney is entitled to a hearing to determine whether Dwight Jones is a danger to himself or others.
*39 In accordance with the statute, CPL 730.60 (subd 6, par [c]), the hearing is to be held within 10 days from the date this order shall be issued.

. The respondent was arrested on or about April 23,1981 and charged with assault in the third degree, harassment and resisting arrest, having allegedly punched a woman with his fists while on a subway platform.

. See Release of Data Ordered in Novel Competency Ruling, NYLJ, Feb. 16, 1982, p 1, col 4.

. On the same day, the Governor approved chapter 548 of the Laws of 1980, known as the Insanity Defense Reform Act, which amended CPL 330.20 pertaining to the *35 procedure following verdict or plea of not responsible by reason of mental disease or defect. This section which establishes criteria for the release or discharge of patients from psychiatric centers was also designed to “ensure the protection of the public from future dangerous acts of individuals found not responsible, while safeguarding the rights of such individuals.” (Governor’s Approval Memorandum, NY Legis Ann, 1980, p 219.)